**Ida JACK, Plaintiff,**

v.

**GLAXO WELLCOME INC., Defendant.**

**No. CIV.A.1:99CV2697CAP.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 23, 2002.

Lawrence S. Burnat, Jason Wayne Graham, Schreeder Wheeler & Flint, Atlanta, GA, for plaintiff.

Bradley Wayne Grout, Powell Goldstein Frazer & Murphy, Atlanta, GA, Jerry Byron Blackstock, Hunton & Williams, Atlanta, GA, for defendant.

## ORDER

PANNELL, District Judge.

This matter is currently before the court on a number of motions. By this order, for the reasons set forth below: the plaintiff's motion to exceed the page limit established by the local rules [Doc. No. 50–1] is **GRANTED**; the defendant's motion to exceed the page limit established by the local rules [Doc. No. 60–1] is **GRANTED**; the defendant's motion for an evidentiary hearing on its motion for summary judgment and motions in limine [Doc. No. 68–1] is **DENIED**; the defendant's motion in limine regarding Dr. Richtand [Doc. No. 47–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion in limine regarding Dr. Tiedt [Doc. No. 48–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion in limine regarding Dr. Rand [Doc. No. 46–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion in limine with respect to Dr. Oren [Doc. No. 65–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion to strike the affidavit of Dr. Welge [Doc. No. 66–1] is **DENIED AS MOOT**; and, the defendant's motion for summary judgment [Doc. No. 43–1] is **GRANTED**.

In analyzing a summary judgment motion, the court resolves all issues of fact in favor of the non-movant, here, the plaintiff. *See Cottrell v. Caldwell,* 85 F.3d 1480 (11th Cir.1996). Accordingly, the court states the facts of the case in the light most

favorable to the plaintiff. Therefore, the facts, as stated below, may not prove to be the facts that would be established at trial. *See Hartsfield v. Lemacks,* 50 F.3d 950, 951 (11th Cir.1995) (citing *Rodgers v. Horsley,* 39 F.3d 308, 309 (11th Cir.1994)).

## I. *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Zyban ® is an FDA approved prescription drug marketed and sold by the defendant, Glaxo Wellcome Inc., now GlaxoSmithKline (Glaxo), as an aid to smoking cessation. The active ingredient in Zyban ® is bupropion. Bupropion is an antidepressant. Glaxo also markets and sells bupropion under the name Wellbutrin ® as an antidepressant. The plaintiff, Ida Jack, brought this civil action against Glaxo for injuries she allegedly sustained when she ingested Zyban ® at the direction of her doctor.

On three separate occasions, Glaxo has received FDA approval to market bupropion. First, Wellbutrin ® IR (Immediate Release) was approved. Then, Wellbutrin ® SR (Sustained Release) was approved. Zyban ® was the third time Glaxo won FDA approval to market bupropion. It is marketed as an aid to smoking cessation and is delivered in sustained release doses.

Ida Jack was born in Miami, Florida in 1942. She began smoking cigarettes at the age of fifteen and began smoking cigarettes on a regular basis at the age of eighteen. She married John Mesler on October 19, 1963. She gave birth to her only child, a daughter, in April of 1967. The family moved to the Atlanta, Georgia area in 1977. Ida Jack was divorced from John Mesler in 1982. Mr. Mesler remarried that same year. The Mesler's daughter chose to stay with her father.

Mrs. Jack also remarried in 1982. Her second husband was Joe Alessi. Ida Jack and Mr. Alessi were divorced in 1984. During the time she was married to Mr. Alessi, Mrs. Jack learned that her first husband, John Mesler, had been diagnosed with cancer (leukemia) and had required heart surgery. She was troubled by this news and the fact that she was not able to see her daughter as much as she would like. Not long after she married Mr. Alessi, she was troubled to learn that he liked to dress himself in women's clothing while at home.

In 1983, Mrs. Jack attempted to end her own life by taking an overdose of diazepam (Valium ®) which is in a class of drugs known as benzodiazepines. She had a personal supply of Valium ® pursuant to a doctor's prescription. She, therefore, lived. About one month after her first suicide attempt, Mrs. Jack again attempted to end her own life. She was unsuccessful and, on this occasion, was hospitalized. There is no indication that she has made any other suicide attempts.

In 1984, Mrs. Jack was divorced from Mr. Alessi and was reunited with Mr. Mesler. They did not remarry but lived together. Mr. Mesler was still suffering from leukemia and he died about eighteen months later. During the late seventies and early eighties, Mrs. Jack earned a living in a number of ways. She was a receptionist, she invested in real estate, and she ultimately started her own title pawn business. She operated businesses in the title pawn business for a number of years to follow.

In 1988, Mrs. Jack was married for the third time. She married Steve Jack. Not long after they were married, Mr. and Mrs. Jack moved to Ellijay, Georgia. In October of 1996, Ida Jack was divorced from Steve Jack. In March of 1997, Steve and Ida Jack were living together again and they were remarried in March of 1998.

After moving to Ellijay, the plaintiff began seeing Dr. Carlos Selmonosky as her primary care physician. Over the course

of seeing the plaintiff, Dr. Selmonosky often encouraged her to cease smoking in the interest of her health. In September of 1997, Dr. Selmonosky suggested that she take Zyban ® as an aid to smoking cessation. The plaintiff decided that she would attempt to stop smoking with the assistance of Zyban ®. Dr. Selmonosky gave the plaintiff a sample packet containing three pills. Dr. Selmonosky called in a prescription for her to begin after taking the samples.

On September 25, 1997, the plaintiff took her first pill from the sample pack. On the 26th and 27th she took the other two pills contained in the sample pack. There was a two day gap in her treatment due to a delay in having the prescription filled. She resumed her treatment on September 30, 1997 and continued a one pill per day regimen until October 6, 1997. On that day, Ida Jack had a serious medical episode. She was transported to the hospital for care. She was treated at the hospital for approximately six hours until her symptoms had resolved. Nevertheless, Mrs. Jack continued to have recurrences of many of the symptoms she experienced that day as well as a number of new symptoms she had never experienced before October 6, 1997.

Ida Jack stopped taking Zyban ® on October 6, 1997 and has not taken any form of bupropion since. Her attempt to stop smoking was unsuccessful. Shortly after she stopped taking Zyban ®, the plaintiff's mother had surgery and the plaintiff stayed with her mother to care for her during her recovery. Further, late in 1997, her father suffered a stroke. He later died in May of 1998. In the months and years following her ingestion of Zyban ®, the plaintiff has complained of a multitude of medical maladies and ailments and has visited, been examined by, and been treated by a number of healthcare professionals.

Some of the medical ailments suffered by the plaintiff since October 6, 2001, include: tachycardia (increased heart rate), bradycardia (decreased heart rate), edema, panic attacks, panic disorder, hair loss, urinary incontinence, urethral stricture, various renal ailments, digestive disorders, stress hypoglycemia, hematuria, hypertension (high blood pressure), and an abscessed tooth. The plaintiff either has attributed or does attribute each of these ailments to an adverse reaction to Zyban ®.

Mrs. Jack filed the instant suit in state court. Glaxo removed the action to this court based on diversity jurisdiction. Discovery ensued. At the close of the discovery period, Glaxo moved for summary judgment and, at the same time, moved to exclude a substantial amount of evidence offered by the plaintiff. Much of the defendant's motion for summary judgment is dependant on the evidentiary motions. The court, therefore, addresses the evidentiary matters first.

## II. LEGAL ANALYSIS

### A. Motions To Exceed Page Limitations

The plaintiff's motion to exceed the page limit established by the local rules [Doc. No. 50–1] is **GRANTED**. The defendant's motion to exceed the page limit established by the local rules [Doc. No. 60–1] is **GRANTED**.

### B. Motion For Evidentiary Hearing

Glaxo has moved the court for an evidentiary hearing on its motions in limine and its motion for summary judgment. The plaintiff has expressly notified the court, through her duly filed response to the defendant's motion, that she does not believe that oral argument or an evidentiary hearing is required and that the briefs filed with the court are sufficient. The

court is inclined to agree with the plaintiff. The court does not find that oral argument or an evidentiary hearing would assist the court in ruling on any of the pending motions. Therefore, the defendant's motion for an evidentiary hearing on its motion for summary judgment, and motions in limine [Doc. No. 68–1] is **DENIED**.

### C. *Motions In Limine And To Exclude And To Strike*

Glaxo contends that a number of the plaintiff's proposed expert witnesses are unqualified, that their opinions are irrelevant or that their testimony should otherwise be excluded under the Federal Rules of Evidence and under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny. The plaintiff opposes the motion. Federal Rule of Evidence 401 states that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

#### 1. **Expert Testimony Standard**

██ Expert testimony is admissible when:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 565 n. 1 (11th Cir.1998). The requirements for admitting scientific expert testimony under *Daubert* apply to all experts. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The first prong of this analysis requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony. The question of whether a proposed witness is competent to testify as an expert is a matter left largely to the discretion of this court. *See Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir.1976).[1]

██ The Supreme Court noted in *Daubert* that the "inquiry envisioned by Rule 702 is, we emphasize, a flexible one." *Daubert,* 509 U.S. at 594, 113 S.Ct. at 2797. Many factors will "bear on the inquiry [into whether an expert's reasoning or methodology is reliable], and we do not presume to set out a definitive checklist or test." *Daubert,* 509 U.S. at 593, 113 S.Ct. at 2796. Nevertheless, the Court did identify several factors that may be relevant to

---

**1.** *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981)("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit ..., as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

such an inquiry. These factors include: "whether a theory or technique ... can be (or has been) tested"; whether it "has been subjected to peer review and publication"; the "known or potential rate of error" of the theory or technique, as well as the "existence and maintenance of standards controlling [its] operation"; and the degree to which the relevant scientific community accepts the theory or technique as reliable. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. at 2796–97. The district judge is obligated to act as a gatekeeper and ensure that the proffered testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. at 2799.

■ Rule 702 was amended in 2000 and now provides that gatekeeping judges before allowing a qualified expert to testify must determine whether "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." This "gatekeeping inquiry must be tied to the facts of a particular case." *Kumho*, 526 U.S. at 150, 119 S.Ct. at 1175(quotations omitted).

■ The focus of this inquiry is not on the conclusions generated by the expert's methodology, but on the reasonableness of the expert's use of such an approach, together with the particular method of analyzing the data obtained, to draw a conclusion regarding the specific matter to which the expert testimony is directly relevant. *Kumho*, 526 U.S. at 153–54, 119 S.Ct. at 1177. The "overarching" goal of *Daubert*'s gatekeeping requirement " ... is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152, 119 S.Ct. at 1176. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho*, 526 U.S. at 157, 119 S.Ct. at 1179. Instead, in terms of reliability, it is not the general acceptance of the methodology that is relevant rather, it is the "reasonableness of using such an approach, along with [the expert's] particular method of analyzing the data obtained, to draw a conclusion regarding the particular matter to which the expert testimony [is] directly relevant." *Kumho*, 526 U.S. at 154, 119 S.Ct. at 1177.

## 2. The Plaintiff's Proposed Expert Testimony

### a. *Dr. Neil M. Richtand, M.D.*

■ The plaintiff has selected and proffered Dr. Richtand as an expert witness. Dr. Richtand's testimony is offered for the purpose of proving general causation. That is to say, Dr. Richtand's testimony is offered as proof that Zyban ® can cause panic attacks and panic disorder. Dr. Richtand bases the former conclusion on his re-analysis of studies conducted by Glaxo in an effort to obtain FDA approval for Wellbutrin ® SR. The later conclusion he bases upon his belief that substances containing some of the chemical properties of bupropion can cause panic attacks which lead to panic disorder even though the chemical is discontinued and eliminated from the body.

The court finds Dr. Richtand to be a well-trained, highly educated, and experienced psychiatrist. He has an extremely impressive professional track record. This finding, however, does not obviate the need for a more thorough analysis of whether Dr. Richtand is qualified and competent to testify as an expert as to the

subject matter of his proposed testimony. The court notes that Dr. Richtand has never conducted or administered a clinical trial of any drug.[2] Neither has Dr. Richtand conducted any independent research on bupropion. Further, Dr. Richtand has never performed the type of analysis he performed in this case. Accordingly, the court is troubled by the proposal that Dr. Richtand is qualified to offer an opinion that essentially challenges the methodology, conduct, and conclusions of selected studies performed by Glaxo. Nevertheless, the court, mindful of Dr. Richtand's extensive education, training, and experience in the field, will not disqualify him as incompetent to testify regarding the matters he addresses in his report.

The court rejects Dr. Richtand's testimony on the basis that his purported methodology is unreliable and does not satisfy Rule 702 or *Daubert* scrutiny. Dr. Richtand's analysis was essentially limited to a review of the final reports associated with three studies conducted by Glaxo. Dr. Richtand rearranged data from those studies in a manner that he felt was more appropriate. He then asked a statistician to perform an analysis of the numbers he generated. He concluded that the results of the statistical analysis supported to a reasonable degree of medical certainty that bupropion can cause panic attack. The court cannot allow this unreliable conclusion to be presented to the jury.

Dr. Richtand's conclusion that bupropion causes or can cause panic attacks and panic disorder does not rest on sufficiently reliable scientific methodology. *See City of Tuscaloosa,* 158 F.3d 548. Nor is it supported by sufficient facts or data. Instead, his conclusion is more properly clas-

sified as a theory. This theory he derived from a reclassification and analysis of data from prior studies. His methodology, however, is far too speculative for the court to allow. Dr. Richtand has reclassified data based on his belief that certain events should properly be classified under different categories than those the original researchers chose. He has done so largely without review of any facts specific to any specific patient or event. Rather, he has essentially hypothesized a possible or probable scenario whereby the reclassification is justified. This post hoc approach is certainly not reliable absent a particularized reason for the individual reclassification.

For expert analysis to be acceptable in court, it must be subjected to the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho,* 526 U.S. at 152, 119 S.Ct. at 1176. Here, much of Dr. Richtand's analysis is based on his own suspicions about what the investigator, who was examining the actual patient, erroneously did or concluded. He did not rely on the raw data from the previous studies. Moreover, he generally questions the basis for the classifications employed by the Glaxo trial administrators. As such the court finds that his analysis is based, at least in significant part, on his own ipse dixit. Such opinions are generally not admissible under the rules of evidence or *Daubert. See Kumho,* 526 U.S. at 157, 119 S.Ct. at 1179.

The technique offered by Dr. Richtand has not been tested. The court is uncertain that any accurate test could be performed since the technique relies primarily on reclassification of final data presented

---

**2.** Dr. Richtand has been an investigator in clinical trials in the past. Therefore, he is familiar with the procedure of clinical trials and their administration at the patient level. Nevertheless, he has not conducted such a study. Neither has the plaintiff produced evidence that Dr. Richtand has ever held a professional position where the analysis and review of the conduct of clinical trials has been part of his job function.

in other studies. It is clear that his technique has not been subjected to peer review in publication nor has it been published at all. Of course, establishing a known rate of error for Dr. Richtand's reclassification analysis would be difficult if possible at all. Further, the court notes that the plaintiff has presented no evidence of any study purporting to show that bupropion can cause panic attack or panic disorder. Nor is there any evidence that the notion that bupropion can have the affect claimed by the plaintiff has any level of acceptance within the relevant medical communities.

The court finds the proposed testimony of Dr. Richtand to be unreliable. The primary reason Dr. Richtand's analysis is unreliable because it is a re-analysis of other studies which did not reach the same conclusion. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1315 (11 th Cir. 1999). Dr. Richtand's re-analysis is founded upon the premise that his post hoc substituted judgment is superior to the classification made by the investigators who were in direct contact with the respective patients. This methodology is not sufficiently reliable to qualify as expert testimony. *See Perry v. United States*, 755 F.2d 888, 892 (11th Cir.1985) ("rediagnosing" cases from previous analysis for purpose of re-analysis is grounds to reject the second analysis). The court is also persuaded by that complete lack of any peer reviewed analysis purporting to establish a link between bupropion and panic attack or panic disorder. This factor is far from conclusive. Nevertheless, the complete silence on the subject from the medical community is persuasive. Moreover, the only analysis the plaintiff has offered to support Dr. Richtand's conclusion fails to do so. Dr. Oren's analysis, at best, supports a hypothesis that bupropion may be linked to panic attack and panic disorder. Because the court finds the methodology employed by Dr. Richtand to be unreliable and, therefore, inadmissible, the defen-

dant's motion in limine to exclude his testimony is granted. The testimony of Dr. Richtand is excluded. As set forth more fully below, the court grants summary judgment in favor of the defendant based on a lack of evidence of general causation and based on the learned intermediary doctrine. Accordingly, to the extent the defendant's motion seeks to exclude any of Dr. Richtand's opinions unrelated to general causation, the remainder of the defendant's motion in limine is moot. The defendant's motion in limine [Doc. No. 47–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

b. *Dr. Thomas N. Tiedt, Ph.D.*

The plaintiff has selected and proffered Dr. Tiedt as an expert witness. As is made clear by the plaintiff's response to the defendant's motion in limine, Dr. Tiedt's testimony is offered for the sole purpose of showing that the Zyban ® label contained inadequate warnings. *See* Plaintiff's Brief In Opposition To Defendant's Motion In Limine To Exclude Opinions And Testimony Of Dr. Thomas Tiedt [Doc. No. 55–1]. Accordingly, to the extent the plaintiff once sought to offer Dr. Tiedt as an expert regarding general causation, she has abandoned such effort. Therefore, the portion of the defendant's motion in limine seeking to exclude Dr. Tiedt's opinions regarding the ability of bupropion to cause panic attack and panic disorder is due to be granted. As set forth more fully below, the court grants summary judgment in favor of the defendant based on a lack of evidence of general causation and based on the learned intermediary doctrine. Accordingly, to the extent the defendant's motion seeks to exclude any of Dr. Tiedt's opinions unrelated to general causation, the remainder of the defendant's motion in limine is moot. The defendant's motion in limine [Doc. No. 48–1] is **GRANTED IN**

PART AND DENIED AS MOOT IN PART.

c. *Dr. Julie A. Rand, M.D.*

 The plaintiff has selected and proffered Dr. Rand as an expert witness. Dr. Rand's testimony is offered for the purpose of proving specific causation. That is to say, Dr. Rand's testimony is offered as proof that Zyban ® did, in fact, cause panic attacks and panic disorder in the plaintiff. To the extent Dr. Rand's report and deposition testimony can be read to suggest that she is offering her opinion regarding general causation, the court finds her testimony unreliable and inadmissible under the Federal Rules of Evidence and *Daubert* and its progeny. Dr. Rand's opinions on general causation are unsupported by any scientific study on her part and generally consist of her representations of general knowledge in the psychiatric field. As noted above in the discussion of Dr. Richtand's opinions, however, the plaintiff has presented no evidence that the medical community has accepted the notion that bupropion can cause panic attacks or panic disorder.

Essentially, Dr. Rand offers her interpretation of unrelated publications. Her opinions attempt to "connect the dots." There is no research, however, demonstrating the connection. As such, the court finds her opinions in this regard to be, at best, a hypothesis. Her opinions provide a plausible explanation, but are neither supported or confirmed by any scientific evidence. Accordingly, to the extent Dr. Rand's testimony is offered as proof of general causation, the defendant's motion is due to be granted. As set forth more fully below, the court grants summary judgment in favor of the defendant based on a lack of evidence of general causation and based on the learned intermediary doctrine. Accordingly, to the extent the defendant's motion seeks to exclude any of Dr. Rand's opinions unrelated to general causation, it is moot. The defendant's motion in limine [Doc. No. 46–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

d. *Dr. Dan A. Oren, M.D.*

 The plaintiff, in response to the defendant's motion for summary judgment, seeks to rely on Dr. Oren's opinions. The plaintiff seeks to offer Dr. Oren's testimony for the purpose of showing general causation. The plaintiff, however, did not provide any notice, prior to her response, of her intent to rely on Dr. Oren as an expert. Accordingly, the first grounds raised by the defendant in opposition to Dr. Oren's opinion testimony is the plaintiff's failure to comply with Federal Rule of Civil Procedure 26 and Local Rule 26.3.

The plaintiff has failed to comply with both of the above referenced rules. The plaintiff's attempt to twist the Rule 26 requirement of an expert report to apply only where an expert is being paid by a party misses the point of the rule. Glaxo is not relying on Dr. Oren. Glaxo has not indicated any intent to call Dr. Oren as a witness in any form. The expert report requirement of Rule 26 serves the purpose of providing the other party with the substance of the proposed testimony, an opportunity to analyze the expert and the methodology, and a chance to seek out its own expert. The plaintiff is the party seeking to offer Dr. Oren as an expert. Arguing that Glaxo should have known ignores the clear requirement that Rule 26 places on the party who intends to offer an expert to affirmatively notify the opposing party of that fact and to provide an expert report. Based on the court's holding below and the fact that Glaxo did have Dr. Oren's FDA report, it is likely that the defendant was not substantially prejudiced by the plaintiff's failure to comply with the rules. Nevertheless, The court finds the

plaintiff's noncompliance with Rule 26 to be sufficient grounds to exclude Dr. Oren's opinion testimony.

The plaintiff's contention that the defendant's motion in limine is untimely is incorrect. A motion in limine is not a dispositive motion. Instead, it is a motion which seeks to exclude certain evidence. If the court grants a motion in limine, it may have the affect of leaving a party without evidence to support some or all of their cause of action. Thus, a dispositive motion might turn on the resolution of a motion in limine. Still, the motion in limine, itself, is not a dispositive motion.

 Even if Dr. Oren's proffered expert testimony were not excluded for failure to comply with the rules, his testimony does not satisfy the reliability requirements required for expert testimony. Dr. Oren employed, essentially, the same technique as Dr. Richtand. Interestingly, however, the two doctors, who gave practically the same rationale for reclassifying certain data, did not arrive at the same numerical results. This discrepancy in the rehashing of the data from the prior studies only further confirms what the court finds to be an unacceptable and unreliable level of arbitrariness inherent in the method employed. "Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997). Dr. Oren's work was done in the context of looking for problems or errors in Glaxo's research. In doing so he reclassified the data contained in the Glaxo research in such a way that it caused him to believe that there might be or that there

was likely a link between anxious states and bupropion. Dr. Richtand's work was done in the context of looking for proof of Dr. Oren's hypothesized link. Both of their reviews, however, more closely resemble a "clinical process, in which conclusions must be extrapolated from incomplete data" rather than the "scientific method, in which conclusions must be drawn from an accepted process." *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194 (11th Cir.2002).

Further, the court finds that, contrary to the plaintiff's assertions, Dr. Oren has not offered an opinion that bupropion causes panic attack to a reasonable degree of medical certainty. Rather, a thorough review of the evidence in this case related to Dr. Oren and his opinions as expressed in his deposition supports only a hypothesis that bupropion might or could cause panic attack. As such his opinion is too speculative to provide a basis for concluding that bupropion does cause panic or panic attack.

Accordingly, to the extent Dr. Oren's testimony is offered as proof of general causation, the defendant's motion is due to be granted. As set forth more fully below, the court grants summary judgment in favor of the defendant based on a lack of evidence of general causation and based on the learned intermediary doctrine. Therefore, to the extent the defendant's motion seeks to exclude any of Dr. Oren's opinions unrelated to general causation, it is moot. The defendant's motion in limine [Doc. No. 65–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

e. *Jeffery A. Welge, Ph.D.*

The defendant filed a motion to strike the affidavit of Dr. Jeffery A Welge, Ph.D. The subject affidavit purports to perform statistical analysis of figures based on Dr. Oren's analysis of the Glaxo studies while

he was employed at the FDA. The reason the court does not accept the methodology espoused by the plaintiff has nothing to do with the statistical analysis. Rather, the court has rejected the second hand gathering and reclassifying of the information contained in the Glaxo study as an acceptable means of showing general causation. Good or bad math can neither save nor discredit unreliable science. Accordingly, the statistical models and techniques employed by Dr. Welge are not a factor in the court's decision either way. Accordingly, the defendant's motion to strike [Doc. No. 66–1] is **DENIED AS MOOT**.

### D. *Motion For Summary Judgment*

#### 1. **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *see also Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its mo-

tion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *See Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510.

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the non-movant. *See id.* In order for factual issues to be "genuine" they must have a real basis in the record. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. "When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* (citations omitted).

#### 2. **The Plaintiff's Claims**

The plaintiff's case is premised on products liability. She has sued the manufacturer of a product she consumed for harm she allegedly sustained based on the manner in which the drug affected her. Her substantive complaint is that Glaxo did not provide adequate warning that panic attack and panic disorder could result from ingesting the defendants product.

 The plaintiff has alleged causes of action for negligence (failure to

warn), strict liability, and breach of implied warrantee. "Whether proceeding under a strict liability or negligence theory, 'proximate cause' is a necessary element of [the plaintiff's] case." *Powell v. Harsco Corp.*, 209 Ga.App. 348, 350, 433 S.E.2d 608, 610 (1993) (quoting *Talley v. City Tank Corp.*, 158 Ga.App. 130, 279 S.E.2d 264, 269 (1981)). It is elementary that, in order to recover, a plaintiff must show that bupropion actually caused the injuries of which she complains. Here, in order to survive the motion for summary judgment, the plaintiff must produce evidence that would allow a reasonable jury to find, to a reasonable degree of medical certainty, that bupropion is (1) capable of causing panic attack and/or panic disorder and (2) that bupropion did in fact cause her to suffer a panic attack and/or develop panic disorder. *See Siharath v. Sandoz Pharmaceuticals Corp.* 131 F.Supp.2d 1347, 1352 (N.D.Ga.2001) (*aff'd. Rider, supra,* 295 F.3d 1194, 2002 WL 1362182).) This first element is termed "general causation" while the second element is termed "specific causation." *Id.* (citing *Wheat v. Sofamor, S.N.C.,* 46 F.Supp.2d 1351, 1357 (N.D.Ga.1999). "General causation is the capacity of a product to cause injury; specific causation is proof that the product in question caused the injury of which the plaintiff complains." *Wheat,* 46 F.Supp.2d at 1357.

■ Here, the plaintiff has not met her burden of showing that bupropion is capable of causing any of her complained of infirmities.[3] The evidence she sought to present in support of general causation dealt with panic attack and panic disorder. The court, however, has excluded that evidence. Therefore, the plaintiff has not carried her burden of creating a triable question as to general causation. The court finds that no rational trier of fact could find that bupropion is capable of causing any of the plaintiff's purported damages. Thus, the defendant is entitled to judgment as a matter of law.

■ The defendant is entitled to summary judgment for another reason. Glaxo's liability for Zyban ® is limited by the learned intermediary doctrine. In Georgia, the duty to warn a patient of risks associated with prescription drugs (and implanted medical devices) rests, not with the manufacturer, designer, or distributor, but solely with the treating physician, because the decision to employ prescription medication involves professional assessment of medical risks in light of the physician's knowledge of a patient's particular needs and susceptibilities. This "learned intermediary doctrine" is an understandable exception to the general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. *See McCombs v. Synthes (USA),* 250 Ga.App. 543, 545–46, 553 S.E.2d 17, 20–21 (2001); *Presto v. Sandoz Pharmaceuticals Corp.,* 226 Ga. App. 547, 548–49, 487 S.E.2d 70, 73 (1997); *Hawkins v. Richardson–Merrell, Inc.,* 147 Ga.App. 481, 483, 249 S.E.2d 286, 288 (1978); *and see Wheat,* 46 F.Supp.2d at 1363. Thus, Glaxo's duty to warn regarding Zyban ® extends only to the prescribing physician.

■ The plaintiff argues that Glaxo failed to adequately warn doctors of the alleged risk of panic attack and panic disorder associated with bupropion. This argument, however, is belied by the theories of her own proffered experts. An essential element of the plaintiff's rejected general causation theory is that nervousness,

---

**3.** To the extent the plaintiff has asserted claims that relate to infirmities that are warned against in the literature provided with the drug, her claims are defeated pursuant to the learned intermediary doctrine discussed more fully below.

anxiety, anxiety attack, panic, and panic attack are all related and interrelated phenomenon. The proffered experts asserted that the reclassification was justified in part by the commonality of these symptoms and maladies. They reasoned that doctors generally, and the medical profession accepted that such events were properly grouped together and should be considered related. If that is true, then Dr. Selmonosky, the physician who prescribed the bupropion, was given adequate warning by Glaxo. The package insert clearly represents nervousness and anxiety as treatment emergent adverse events occurring during the comparative trial. The insert also lists CNS (central nervous system) stimulation as an event observed during the clinical development and post-marketing experience of bupropion. If connection between these events is not sufficient to imply that the existence of one displays the possibility of the other, then the methodology of the plaintiff's proposed experts is called into even further question.

Accordingly, because the plaintiff has failed to present sufficient evidence to create a genuine issue of material fact regarding general causation, an essential element of her case, and because even if her theory of causation were accepted, the defendants would be insulated from liability by the learned intermediary doctrine, the defendant is entitled to summary judgment. Therefore, the defendant's motion for summary judgment [Doc. No. 43–1] is **GRANTED**.

### III. *CONCLUSION*

For all of the above and foregoing reasons: the plaintiff's motion to exceed the page limit established by the local rules [Doc. No. 50–1] is **GRANTED**; the defendant's motion to exceed the page limit established by the local rules [Doc. No. 60–1] is **GRANTED**; the defendant's motion for an evidentiary hearing on its motion

for summary judgment and motions in limine [Doc. No. 68–1] is **DENIED**; the defendant's motion in limine regarding Dr. Richtand [Doc. No. 47–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion in limine regarding Dr. Tiedt [Doc. No. 48–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion in limine regarding Dr. Rand [Doc. No. 46–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion in limine with respect to Dr. Oren [Doc. No. 65–1] is **GRANTED IN PART AND DENIED AS MOOT IN PART**; the defendant's motion to strike the affidavit of Dr. Welge [Doc. No. 66–1] is **DENIED AS MOOT**; and, the defendant's motion for summary judgment [Doc. No. 43–1] is **GRANTED**.