**FURMANITE AMERICA, INC., Plaintiff,**

v.

**T.D. WILLIAMSON, INC., TDW Services, Inc., Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John Foushi and Bryan McDonald, Defendants.**

**No. 6:06CV641 ORL19JGG.**

United States District Court, M.D. Florida, Orlando Division.

April 5, 2007.

Daniel W. Matlow, Thomas K. Gallagher, Ruden, McClosky, Smith, Schuster & Russell, PA, Ft Lauderdale, FL, for Plaintiff.

Richard D. Tuschman, Epstein Becker & Green, P.C., Neil F. McGuinness, Neil F. Mcguinness, P.A., Miami, FL, for Defendants.

## ORDER

FAWSETT, Chief Judge.

This case comes before the Court on the following:

1. Defendants' Motion to Strike Plaintiff's Computer Forensics Expert, filed by Defendants T.D. Williamson, Inc., TDW Services, Inc., Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John Foushi and Bryan McDonald (collectively "TDW") on December 29, 2006; (Doc. No. 96);

2. Notice of Filing Deposition Transcript of Eric Lakes, filed by TDW on December 29, 2006; (Doc. No. 97);

3. Defendants' Motion to Strike Plaintiff's Damages Expert, filed by TDW on December 29, 2006; (Doc. No. 98);

4. Notice of Filing Deposition Transcript of Michael O'Rourke, CPA, filed by TDW on December 29, 2006; (Doc. No. 99);

5. Plaintiff's Response to Defendants' Motion to Strike Plaintiff's Damages Expert, filed by Plaintiff Furmanite America, Inc. ("Furmanite") on January 9, 2007; (Doc. No. 108);

6. Notice of Filing Deposition Transcript of Henry Fishkind, filed by Furmanite on January 9, 2007; (Doc. No. 109);

7. Notice of Filing Declarations of Eric Lakes, Daniel Matlow, and Michael O'Rourke, filed by Furmanite on January 9, 2007; (Doc. Nos. 110, 111, & 112);

8. Plaintiff's Memorandum of Law in Response to Defendants' Motion to Strike Plaintiff's Computer Forensics Expert, filed by Furmanite on January 9, 2007; (Doc. No. 113); and

9. Defendants' [Corrected] Reply to Plaintiff's Response to Defendants' Motion to Strike Plaintiff's Damages Expert, filed by TDW on March 30, 2007. (Doc. No. 140).

## Background

Furmanite and T.D. Williamson, Inc. are both firms which operate in the industrial pipeline repair industry. Prior to December of 2005, Furmanite employed Defendants Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, Nicole Turner, John Foushi as employees in its Orlando, Florida service center. (*E.g.*, Doc. No. 61, ¶ 24). On March 31, 2006, Greg Foushi, Jose Delgado, Saul Ferrer, James Jackson, Robert Jolin, Michael Mainelli, Rebecca Minervino, James Overstreet, Robert Schmidt, and Nicole Turner all resigned from their employment with Furmanite, allegedly without providing any advance notice of their resignations and leaving Furmanite's Orlando office without staffing.[1] (*Id.* at ¶ 31).

The crux of the instant case is an alleged conspiracy on the part of the corporate and individual defendants to cripple Furmanite's Orlando office by having the former employees simultaneously resign on March 31, 2006 while also removing Furmanite's property and engaging in trade slander. (*See generally* Doc. No. 61). TDW denies the above allegations, and Defendants Greg Foushi and Michael Mainelli counterclaim for breach of contract and unpaid commissions. (*See generally* Doc. Nos. 65, 66). As the matter presently before the Court deals with the legal issue of striking expert witnesses, the Court will omit discussion of the remaining factual allegations of the Amended Complaint and the counterclaims.

In its Motion to Strike Plaintiff's Computer Forensics Expert, TDW argues that Furmanite's computer specialist, Eric Lakes, should be excluded from testifying at trial on the grounds that Plaintiff failed to identify Mr. Lakes as an expert or provide and expert report from him in accordance with the Case Management and Scheduling Order which governs the instant case. (Doc. No. 96, p. 1). In response, Furmanite argues that Mr. Lakes is a hybrid fact/expert witness, and thus an expert report is not necessary under the Federal Rules of Civil Procedure. (Doc. No. 113, p. 9). In the alternative, Furmanite argues that its disclosure of Mr. Lakes, which occurred twelve (12) days past the disclosure deadline, and its failure to submit an expert witness report, should the Court find one was required, constitute harmless errors which were substantially justified. (*Id.* at pp. 11–16). Finally, Furmanite states that precluding Mr. Lakes' testimony is a drastic remedy and that should the Court find for TDW, lesser

---

1. John Foushi had previously resigned on March 17, 2006. (*E.g.,* Doc. No. 61, ¶ 28).

sanctions are preferable. (*Id.* at pp. 17–19).

In its Motion to Strike Plaintiff's Damages Expert, TDW argues that the opinions of Furmanite's damages expert, Michael O'Rourke, are based on an invalid and unreliable methodology and erroneous assumptions. (Doc. No. 98, p. 1). TDW argues that Mr. O'Rourke should be stricken under the United States Supreme Court case of *Daubert v. Merrell Dow Pharmaceuticals*[2] and its progeny. (*See generally id.*). In response, Furmanite argues that Mr. O'Rourke used an appropriate methodology and that TDW is inappropriately attempting to use *Daubert* to argue questions relating to the weight and not the admissibility of the proffered evidence. (Doc. No. 108, pp. 2–3). TDW has submitted a Reply Brief which further argues that Mr. O'Rourke did not use financial data available to him in rendering his damages calculations. (Doc. No. 140–2, p. 3).

### Standard of Review

The requirements for the admission of expert testimony in light of *Daubert* are well known. "Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (footnote omitted). There are thus three discrete inquiries: qualifications, relevance, and reliability. *See Quiet Technology DC–8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir.2003) (although there is "some overlap" among these inquiries, they "are distinct concepts that courts and litigants must take care not to conflate."). The burden of establishing these three requisites lies with the proponent of the evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004) (*en banc*).

An expert may be qualified "by knowledge, skill, experience, training, or education." Fed.R.Evid. 702. An expert is not necessarily unqualified simply because her experience does not precisely match the matter at hand. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir.2001); *id.* at 669. To the requirement of Rule 401 that evidence possess a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," Rule 702 adds that expert evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The evidence must "concern matters that are beyond the understanding of the average lay person . . . . [p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63. In addition, the expert evidence "must have a valid scientific connection to the disputed facts in the case." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir.1999). That is, there must be an adequate "fit" between the evidence and the case. *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194, 1202 (11th Cir.2002) (no "fit" where attempting to extrapolate animal studies to the human sphere).

The most heavily litigated component of the *Daubert* analysis is reliability. Expert testimony "must be 'scientific,'

**2.** *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, 125    L.Ed.2d 469 (1993).

meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning more than subjective belief or unsupported assumptions." *McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir.2004). Rule 702 identifies three components of the reliability element: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. *Daubert* also identifies several non-exclusive factors that a court may consider as appropriate in gauging the reliability of the principles and methods utilized by the expert: (1) whether the methodology has been, or is amenable to, testing; (2) whether it has been subjected to peer review and/or publication; (3) the known and potential error rate of the methodology; and (4) whether it has been generally accepted in the relevant scientific community. *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786. "Notably ... these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis." *Quiet Technology DC–8, Inc. v. Hurel–Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir.2003). Among such factors, "[i]n evaluating the reliability of an expert's method ... a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1293 n. 7 (11th Cir.2005).

■ Whatever factors are considered, the Court's focus should "be solely on principles and methodology, not the conclusions they generate." *Allison v. McGhan Medical Corp.,* 184 F.3d at 1312 (internal quotes omitted). It is therefore error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions. *Quiet*

*Technology,* 326 F.3d at 1341. "[A] district court may not exclude an expert because it believes the expert lacks personal credibility because of prior bad acts or other prior instances of untruthfulness." *Rink v. Cheminova,* 400 F.3d at 1293 n. 7. With respect to the third reliability criterion of Rule 702, errors in an expert's application of a reliable method generally implicate credibility rather than reliability. *See Quiet Technology,* 326 F.3d at 1345–46 (using incorrect numbers in a reliable formula is not grounds for exclusion under Daubert).

■ Further, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough [to carry the proponent's burden]." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,* 402 F.3d 1092, 1113 (11th Cir.2005). Similarly, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 1111 (internal quotes omitted). An expert's unexplained assurance that her opinions rest on accepted principles fares no better. *McClain v. Metabolife International, Inc.,* 401 F.3d 1233, 1242 (11th Cir. 2005). Moreover, "[t]he Daubert requirement that the expert testify to scientific knowledge—conclusions supported by good grounds for every step in the analysis—means that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife,* 401 F.3d at 1245 (internal quotes omitted); *see also Hudgens v. Bell Helicopters/Textron,* 328 F.3d 1329, 1344 (11th Cir.2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion.").

## Analysis

### A. Damages Expert

The following facts regarding the opinion of proffered damages expert Michael O'Rourke, CPA, are not in dispute. Mr. O'Rourke was timely disclosed as an expert witness, and Furmanite has timely disclosed his expert witness report to TDW. In such report, Mr. O'Rourke stated the following conclusions. First, he estimated that the value of Furmanite's Orlando office was $9.35 million prior to the resignation of the individual Defendants in the instant case. (Doc. No. 98–2, p. 2). Mr. O'Rourke determined this figure by taking Furmanite's pre-tax operating income of approximately $467,000 for the first quarter of 2006, "annualizing" it, and multiplying the resulting yearly operating income figure by five. (*Id.*) Mr. O'Rourke opined that "unrelated parties would reasonably be expected to pay five times annual operating income for the right to the operating results that Furmanite lost as a result of the Defendants' actions." (*Id.*) He then estimated that the value of the business dropped to $0 after the individual Defendants resigned due to the loss of any operating income and staff and the loss of business opportunity. (*Id.*) Thus, Mr. O'Rourke estimated Furmanite's damages to be $9.35 million, the difference between its worth on March 31, 2006, and April 1, 2006, not including tort-based damages such as those for defamation, tortious interference, conversion, or punitive damages. (*Id.* at p. 3).

TDW raises several objections to the methodology and reliability of the witness' conclusions. First, TDW argues that Mr. O'Rourke's use of only once quarter of unaudited financial data in calculating the Orlando office's worth is not professionally acceptable. Secondly, TDW argues that this damages calculation is unreliable in that it assumes without justification that the income of the office would have remained constant. Next, TDW claims that Mr. O'Rourke's use of a multiplier of five to calculate the worth of the Orlando office is inappropriate, without foundation, based on erroneous assumptions, and belied by the amount Furmanite paid to purchase Flowserve, the company that formerly controlled Furmanite's Orlando office. Finally, TDW claims that Mr. O'Rourke's opinion that the office was worth $0 after the former employees resigned is unreliable and inexplicably ignores financial data in the record. In support of such arguments, TDW submits the expert witness report of Dr. Henry Fishkind who echoes these concerns. (*See* Doc. No. 98–3).

In response, Furmanite argues that Defendants offer merely superficial criticisms of Mr. O'Rourke's analysis and ignore applicable law that damages need not be proved with absolute certainty. Furmanite further argues that many of TDW's attacks relate solely to Mr. O'Rourke's conclusions and not his methodology. Finally, Furmanite argues that its expert's methodology was sound and criticizes Dr. Fishkind's analysis unreliable and speculative points on rebuttal.

After reviewing the arguments and evidence submitted by the parties, the Court finds that TDW's arguments focus on the weight of the proffered evidence rather than the expert's chosen methodology. TDW's arguments that Mr. O'Rourke's findings are speculative and lead to an unreliable estimate of worth are arguments as to the credibility of Mr. O'Rourke's findings rather than the general acceptance of his methods. At this stage, the Court is not permitted to conflate admissibility with credibility by considering the relative weight of competing experts and their opinions. *Quiet Technology*, 326 F.3d at 1341.

This conclusion is buttressed by the arguments of TDW and the rebuttal report

**1132**

of Dr. Fishkind, which focus on the amount of financial data and the amount of the multiplier used by Mr. O'Rourke rather than his use of the "income capitalization approach" to determining net worth. While TDW styles this as an attack on Mr. O'Rourke's methodology, this is more properly characterized as an attack on the values used by Mr. O'Rourke within an acceptable methodology. Errors in an expert's application of a reliable method go to the credibility of an expert's opinion rather than the opinion's reliability under *Daubert*. *See Quiet Technology*, 326 F.3d at 1345–46 (using incorrect numbers in a reliable formula is not grounds for exclusion under Daubert). For these reasons, the Court will deny TDW's Motion to exclude Mr. O'Rourke from testifying at trial.

### B. Computer Forensics Specialist

The following facts regarding the proffered computer forensics specialist Eric Lakes are not in dispute. On or about April 6, 2006, Mr. Lakes was hired by Furmanite to locate and secure the data on Furmanite's computers in its Orlando office. Mr. Lakes acquired data from the eight (8) computer hard drives at the Orlando office, preserving the recovered data and the information regarding which data came from each particular hard drive. Mr. Lakes did not work exclusively for Furmanite, as he continued to service other clients. In November of 2006, Mr. Lakes began to uncover data relevant to the instant litigation. Thus, on November 22, 2006, Furmanite served an Amended Rule 26 Disclosure to TDW to disclose Mr. Lakes as a potential witness with knowledge regarding computer data taken from Furmanite's computers. (Doc. No. 96–2, p. 10). It is not disputed that Furmanite did not identify Mr. Lakes as an expert witness or provide an expert report from Mr. Lakes. (*E.g.*, Doc. No. 113, p. 8). Allegedly as of the date of the submissions by the parties, Mr. Lakes was still sifting through the relevant data.

TDW now moves to exclude Mr. Lakes from testifying at trial. "Rule 26 imposes specific disclosure requirements upon any witness 'who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony.'" *Prieto v. Malgor,* 361 F.3d 1313, 1317 (11th Cir.2004)(quoting Fed.R.Civ.P. 26(a)(2)(B)). "Notice of the expert witness' name is not enough." *Id.* at 1317–18. Furthermore, "[a]ny party that 'without substantial justification' fails to disclose this information is not permitted to use the witness as evidence at trial 'unless such failure is harmless.'" *Id.* at 1318 (quoting Fed.R.Civ.P. 37(c)(1)). However, witnesses properly designated as fact witnesses are not required to file an expert witness report but are precluded from giving expert testimony at trial. *E.g., J.A. ex rel. Abelove v. Seminole County School Bd.,* No. 6:05–cv–975–Orl–31DAB, 2006 WL 2927560, at *2 (M.D.Fla. Oct. 12, 2006).

■ After reviewing the arguments and evidence submitted by the parties, the Court finds that Mr. Lakes is a fact witness, properly disclosed as such to TDW, and thus will be permitted to testify at trial as to factual matters such as what he ascertained from Furmanite's computers when initially engaged to examine them. However, because Mr. Lakes was not timely disclosed as an expert witness and did not prepare an expert witness report in accordance with the Court's Case Management and Scheduling Order, (Doc. No. 39), he will not be permitted to testify as an expert at trial at trial or provide expert opinion.

Mr. Lakes testified that he was retained by Furmanite on or about April 6, 2006, before Furmanite had retained counsel.

(Doc. No. 113–3, ¶ 4; Doc. No. 113, p. 2). He did not begin working with counsel until July of 2006, several months after the instant litigation had commenced. (Doc. No. 113–3, ¶ 7; Doc. No. 113, p. 3). In July of 2006, Mr. Lakes provided the results of his data extraction to counsel for Furmanite. (*See, e.g., id.*). Based on this uncontroverted testimony, it is clear that Mr. Lakes has factual knowledge regarding the instant case derived during his work on Furmanite's computer systems, rather than being subsequently supplied with such information by counsel. Thus, the witness may properly testify as a fact witness based on his personal knowledge of the facts of the instant case. *See* Fed. R.Evid. 701.

In addition, the cases cited by TDW are distinguishable. Unlike the case of *MMI Products, Inc. v. Long,* 231 F.R.D. 215 (D.Md.2005), Mr. Lakes cannot be asked his expert opinion regarding the highly technical question of whether and when a defendant performed a "selective restoration" of a computer's hard drive in order to maliciously overwrite data on a misappropriated laptop computer. *MMI,* 231 F.R.D. at 216. Rather, the scope of Mr. Lakes' testimony, as disclosed by Furmanite, is simply to testify regarding the information on Furmanite's computers. (Doc. No. 96–2, pp. 9–10). Thus, Mr. Lakes is permitted to testify regarding the data obtained from such computers, the dates of the elimination of material from such computers, if based on fact and not opinion, and the procedures used to extract such information. Expert opinion testimony by this witness, however, will not be permitted.

For these reasons, the Court finds Mr. Lakes was properly disclosed to TDW as a fact witness and thus he may properly testify at trial as to his experience in working on the computers in Furmanite's Orlando office. Because of this, no expert witness report or expert witness disclosure was required by Mr. Lakes under Rule 26.

The Court, however, cautions Furmanite that attempts to introduce expert opinion testimony at trial of the type discussed in *MMI* will be excluded on the grounds of unfair surprise due to the failure of Furmanite to designate Mr. Lakes as an expert witness or timely disclose the nature of such testimony to opposing counsel by the dates provided in the Case Management and Scheduling Order.[3] Likewise, testimony as to matters discovered by Mr. Lakes after the cutoff of discovery in the instant case, (*See* Doc. No. 39, p. 1; Doc. No. 71), and for which no supplemental disclosure has been timely made are likewise inadmissible at trial.

For these reasons, the Court will deny without prejudice to reassertion at trial TDW's motion to exclude Mr. Lakes' testimony.

### Conclusion

Based on the foregoing, the Defendants' Motion to Strike Plaintiff's Computer Forensics Expert, filed by TDW on December 29, 2006, (Doc. No. 96), is **DENIED**

---

**3.** For instance, Eric Lakes testified in his deposition that he had no opinion which, if any, files were deliberately manually deleted by the former employees. (Doc. No. 130–2, p. 11). An attempt to introduce expert opinion regarding this issue would likely have to be excluded on the grounds of unfair surprise and failure to timely disclose such information to Defendants in the time provided by the Case Management and Scheduling Order. (Doc. No. 39, p. 1). Testimony that is expert testimony should not "evade the expert witness disclosure requirements set forth in [Rule] 26 simply because the testimony is proffered through a fact witness." *Storage Tech. Corp. v. Custom Hardware Engineering & Consulting Ltd.,* No. 02–12102–RWZ, 2006 WL 1766434, at *36 (D.Mass. Jun. 28, 2006) (quoting Fed.R.Evid. 701, Adv. Comm. Note (2000) (internal quotation marks omitted)).

1134

without prejudice. The Defendants' Motion to Strike Plaintiff's Damages Expert, filed by TDW on December 29, 2006, (Doc. No. 98), is **DENIED**.

**DONE and ORDERED**.