[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10544
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00111-LGW-BWC


GREATER HALL TEMPLE CHURCH OF GOD,

Plaintiff - Appellant,

versus

SOUTHERN MUTUAL CHURCH INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(July 15, 2020)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

After Southern Mutual Church Insurance Company denied an insurance claim filed by Greater Hall Temple Church of God, Greater Hall sued, alleging breach of contract.  The case comes to us on appeal after the district court granted Southern Mutual's motions to strike the testimony of Greater Hall's expert witnesses and granted Southern Mutual's motion for summary judgment.  After careful review of the record, we affirm the district court's decision to exclude Greater Hall's expert witnesses but reverse its decision to grant summary judgment in favor of Southern Mutual.

## I

The relevant facts are known to the parties, so we repeat them only briefly here.  In March 2016, Southern Mutual issued an insurance policy to Greater Hall covering "direct physical loss to covered property" so long as the loss is "caused by a covered peril."  The policy also states that it "do[es] not cover loss caused by water," which it defines to include "[f]lood, surface water, waves, tidal water, or the overflow of a body of water."  The policy further provides that it "do[es] not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain . . . unless . . . [the rain] enter[s] through openings made by a specified peril."  "Specified [p]erils" include, among other things, a "windstorm."

2

After Hurricane Matthew hit Brunswick, Georgia in October 2016, Greater Hall filed an insurance claim with Southern Mutual, alleging that it had sustained covered property damage in the storm's wake. This case centers on damage to the roof of Greater Hall's church building.[1] Greater Hall's insurance claim alleged that wind from Hurricane Mathew caused leaks in the church's roof, which resulted in water damage to the church's interior. In response, Southern Mutual retained an independent field adjuster—Alan Taylor—who inspected the church and determined that the damage was caused not by wind, but by pre-existing structural issues. Relying on Taylor's findings, Southern Mutual then denied Greater Hall's church-roof claims on the ground that they were not covered by its policy.

Greater Hall filed suit in the Superior Court of Glynn County, Georgia, alleging that Southern Mutual had violated the terms of the insurance agreement by failing to pay the church-roof claims. Southern Mutual then removed the case to the U.S. District Court for the Southern District of Georgia. In May 2019, Southern Mutual moved for summary judgment. Along with its summary-judgment motion, Southern Mutual also filed two motions to strike, which sought

---

[1] It appears that Greater Hall claimed additional property damage—including damage to the church building's door awnings and patio cover, as well as damage to its parsonage building and its chain-link fence. Southern Mutual did not contest these additional claims, however, so they are not at issue here.

3

to prevent John Kern and Shawn Brown—two of Greater Hall's witnesses—from testifying as experts. After Greater Hall responded to Southern Mutual's motion for summary judgment by relying, in part, on the affidavit of Alfred Teston—a witness who purportedly observed the church before and after the hurricane and offered his opinions as to the cause of the damage—Southern Mutual filed another motion to strike, alleging that Teston's expert testimony had not been timely disclosed.

The district court referred each of the motions to strike to a magistrate judge. The magistrate judge granted Southern Mutual's motions to strike the expert testimony of Kern and Brown, holding that neither had acquired the requisite experience or had used a sufficiently reliable methodology in formulating their opinions. The magistrate judge also granted in part Southern Mutual's motion to strike the affidavit of Alfred Teston. According to the magistrate judge, Teston's expert opinions were not timely disclosed, so although Teston was free to "recount his physical observations," he could not testify regarding his "opinions as to the cause of the damage to the roof and the source of any subsequent leaks."

The district court overruled Greater Hall's subsequent objections to the magistrate judge's order. Relying on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court held that, based on the record, "it [wa]s apparent that neither Mr. Kern nor Mr. Smith are qualified to be experts" and that

4

"[n]either [of the experts'] approach[es] [wa]s sufficiently reliable." It further held that Teston's affidavit was also properly stricken—at least as to its expert-opinion testimony—because "Greater Hall was required to disclose Mr. Teston as an expert . . . by December 14, 2018," but it "did not do so until June 17, 2019." Accordingly, the district court held that the magistrate judge's order was not erroneous.

The district court then proceeded to grant Southern Mutual's motion for summary judgment, relying on two separate grounds. First, the district court held that the meaning of the term "surface water"—which Greater Hall's insurance contract specifically excludes from coverage—should be interpreted to include rainwater that collects on a roof. Therefore, the court reasoned, "Greater Hall's claim fails because the Policy does not insure the church for damage caused by surface water, which is what Plaintiff alleges here." Second, and separately, the court held that "[e]ven if [it] did not adopt this definition, Greater Hall's claim would still fail" because "Greater Hall has presented no admissible evidence [that] damage to the church's roof [was] caused by [Hurricane Mathew]."

This is Greater Hall's appeal.

## II

First, we consider the district court's decision to exclude the testimony of Greater Hall's three expert witnesses. "We review the district court's decision to

5

exclude expert testimony under Federal Rule of Evidence 702 for abuse of discretion." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1281 (11th Cir. 2015) (alterations adopted) (quotation omitted). Generally, this means that we will "defer to the district court's ruling unless it is manifestly erroneous." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation omitted).

## A

First up is John Kern. Kern inspected the interior and exterior of Greater Hall's church building on April 24, 2017—about six months after Hurricane Matthew passed through Brunswick. After his inspection, Kern authored a two-page report, which stated that the "majority" of the damage to the church building was "due to the winds racking the wood frame structure and the wind causing uplift pressure on the R-Panel roof."

The district court, however, affirmed the magistrate judge's order excluding Kern's expert testimony because "Greater Hall did not produce sufficient evidence to qualify Mr. Kern" and because Kern's approach was not "sufficiently reliable under a *Daubert* analysis." Based on our review of the record, we cannot say that the district court's decision to do so was "manifestly erroneous." Kern admitted that he had little experience with the type of roofing at issue in this case, and Kern's defense of his ultimate conclusion—that the hurricane had caused the damage to the church building's roof—was far from convincing. Kern admitted,

6

for instance, that his opinion was not based on "any method that ha[s] a known or potential rate of error" and that there was not "any scientific or objective basis behind [his] opinion." When he was asked how the accuracy of his opinion could be tested, he responded: "It is my opinion as a professional engineer with lots of roof experience . . . . I have no idea how you would [test it]." We've long held, however, that "[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (quotation omitted). The reliability prong of Rule 702 cannot be established "merely by the *ipse dixit*" of a purported expert. *Id.* The district court therefore did not err in excluding Kern's expert testimony.

**B**

Greater Hall's next expert, Shawn Brown, faces a similar fate. Brown visited the church building on four occasions after Hurricane Matthew, originally for the purpose of bidding on the roof repair contract. Eventually, though, Brown prepared a two-and-a-half page expert report in this case, which concluded that the church building's roof damage "was caused by high winds and rain which occurred in October, 2016."

The district court affirmed the magistrate judge's order excluding Brown's expert testimony, holding that his opinion was not sufficiently reliable under *Daubert*. Again, our review of the record shows that the district court's decision to

7

do so was not "manifestly erroneous." Brown admitted that he was "not an expert in wind or wind velocity" and that his opinion was not based on "science or measurements," but merely on "common sense" that "anyone" could have used. His claim, essentially, was that because he personally experienced the high winds during Hurricane Matthew, he could form the opinion that those winds caused the church building's roof damage. That isn't enough to satisfy the reliability prong of Rule 702. We've stated that "[c]ourts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles." *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002). Brown offered no principles—much less scientific ones—to support his opinion. The district court did not err, therefore, in excluding his opinion.

## C

Finally, there's Alfred Teston. Teston is the owner of Coastal Roofing Company, and in 2015 he installed the roof on Greater Hall's church building. After Hurricane Matthew, Teston examined the roof and prepared a two-and-a-half page affidavit stating that he could see that "the entire roof had shifted or moved" since he installed it. Teston also opined that "[t]he movement of the roof is consistent with being subjected to high winds."

The district court affirmed the magistrate judge's order excluding Teston's affidavit—at least, the portions of it that opined on the cause of the roof damage—

8

on the ground that it was not timely disclosed.  According to the district court, "because [Teston] gave an opinion about causation . . . Greater Hall was required to disclose Mr. Teston as an expert, per court order . . . by December 14, 2018."  It stated that Greater Hall did not do so, however, until June 17, 2019.  The district court found no error in the magistrate judge's conclusion that the untimely disclosure of Teston's expert opinion was not "substantially justified or . . . harmless" under Federal Rule of Civil Procedure 37(c)(1) and it therefore affirmed the magistrate judge's decision to exclude Teston's expert opinion.

For two reasons, we see no reversible error here.  First off, we agree with the district court that because Teston sought to testify regarding the *cause* of the damage to the church's roof—an event he did not himself witness—Teston offered an opinion "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(c).  Greater Hall was therefore required to "disclose . . . the identity" of Teston "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(A), (D).  Although Greater Hall is correct that it identified Teston as an expert in its initial disclosures, those disclosures incorrectly described the subject of his opinion as relating only to "the cost of repairs for the roof."  Teston's eventual affidavit said nothing about the *cost* of repairs—it dealt entirely with the *cause* of the underlying damage.  Greater Hall was therefore under an obligation, pursuant to Federal Rule of Civil Procedure

9

26(e)(1)(A), to supplement its initial disclosures, which it never did. *See id.* ("A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . .").

Second, even if Greater Hall hadn't violated Rule 26(a)(2)(A)'s disclosure requirement, it failed to timely provide Southern Mutual with a copy of Teston's expert report, as required by Rule 26(a)(2)(B). In its scheduling order, the district court set December 14, 2018 as the last day on which Greater Hall could serve its expert witness reports. But Greater Hall did not provide Southern Mutual with a copy of Teston's affidavit—the first document in which Teston's opinion was disclosed—until more than six months after this deadline, on June 17, 2019. Greater Hall therefore failed to timely disclose Teston's opinion. And, like the district court, we hold that this failure was not "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). Greater Hall has offered no explanation for its failure to timely disclose Teston's expert opinion, and it has not shown that its late-breaking disclosure did not prejudice Southern Mutual, who had no opportunity to depose Teston. *See Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006) ("The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party.").

10

Because Greater Hall failed to timely disclose Teston's expert opinion—and because we've held that "[c]ourts have broad discretion to exclude untimely expert testimony," *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019)—we hold that the district court did not err in excluding Teston's expert opinion.

*   *   *

In sum, we hold that the district court did not err in affirming the magistrate judge's order excluding the expert testimony of John Kern, Shawn Brown, and Alfred Teston.  As the magistrate judge noted, however, these witnesses are still permitted to offer lay witness testimony under Federal Rule of Civil Procedure 701.

## III

Next, we consider the district court's decision to grant Southern Mutual's motion for summary judgment.  We review the grant of summary judgment de novo, applying the same legal standards as the district court.  *Whatley v. CAN Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).  We therefore consider "the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003) (quotation omitted).  Here, that means we consider the evidence in the light most favorable to Greater Hall, and we ask whether the evidence,

11

considered in that light, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A

The district court granted summary judgment for Southern Mutual on two separate grounds, and we will consider each in turn.  First, the district court held that Greater Hall's claim—even as alleged—is not covered by its policy with Southern Mutual and therefore fails.  To reach this conclusion, the district court focused on a specific provision of the insurance contract—namely, its statement that it "do[es] not cover loss caused by water," which it defines to include "[f]lood, surface water, waves, tidal water, or the overflow of a body of water."  Relying on caselaw from the U.S. District Court for the Northern District of Ohio, which it found "persuasive," the district court held that the term "surface water" should be interpreted under Georgia law "to include rain collecting on a roof and leaking into a structure."  And because that "is what [Greater Hall] alleges here," the district court held, its claim must fail.

We disagree.  For two reasons, we think that the district court construed Greater Hall's claims too narrowly—and that, properly construed, Greater Hall's claims (at least as alleged) are covered by its policy with Southern Mutual.  First off, the district court's "surface water" analysis considers only one of the types of damage that Greater Hall alleges: the damage to the interior of the church.  The

12

court makes no mention of how its "surface water" analysis would bar Greater Hall's claim that damage to *the church roof itself* is also covered by its policy.

Second, and more importantly, the district court's "surface water" analysis ignores Greater Hall's principal allegation regarding the *cause* of its damages: its allegation that *wind* from Hurricane Matthew caused damage to the church building's roof.  Greater Hall does not merely allege—as the district court's "surface water" analysis seems to presume—that rainwater accumulated on the church building's roof and seeped into its interior.  Rather, it claims that winds of Hurricane Matthew caused structural damage to the roof, creating holes through which rainwater was able to enter and cause damage to the church building's interior.  Both of these types of damage are explicitly considered—and covered—by Greater Hall's contract with Southern Mutual.  As to the roof damage, no one, including Southern Mutual, has disputed that if wind from Hurricane Matthew caused damage to the roof of the church, the damage would be covered by Greater Hall's policy.  And this makes sense, given that hurricanes and wind are not among the "perils excluded" by the policy.  And as to the interior damage, although the contract states that, generally, it "do[es] not cover loss to the interior of buildings or structures or to personal property in the buildings or structures caused by rain," it makes clear that it *does* cover interior rain damage as long as the rain "enter[s]

13

through openings made by a specified peril." And the contract defines "[s]pecified [p]erils" to include a "windstorm."

Based on our review of the record, therefore, the real question is not whether Greater Hall's allegations of damage—if proven—would be covered by its policy with Southern Mutual. We think it clear that they would be. The question, rather, is whether Greater Hall has produced sufficient evidence in support of those allegations to survive summary judgment. And that question takes us to the district court's second ground for granting summary judgment in Southern Mutual's favor.

## B

The district court held that, even aside from its "surface water"-provision analysis, "Greater Hall's claim would still fail" because Greater Hall "presented no admissible evidence [that] damage to the church's roof [was] caused by a wind storm." Relying on this Court's unpublished decision in *Nix v. State Farm Fire & Casualty Company*, 444 F. App'x 388 (11th Cir. 2011), the district court held that "proving causation requires expert testimony." And because all of Greater Hall's purported expert testimony had been excluded, the district court held, Greater Hall could not rebut Southern Mutual's "unchallenged expert witness report," which suggested that "the damage to Greater Hall's church building was caused by poor workmanship," not Hurricane Matthew.

14

We disagree.  The central issue here—now that all of Greater Hall's expert witnesses have been excluded—is whether expert testimony is *required* to prove that a certain force (namely, wind from Hurricane Matthew) produced the damage that Greater Hall claims.  The district court treated this issue as a question of state law, and neither party challenges that determination on appeal.  We therefore assume that Georgia law controls.  *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012) ("If the parties litigate the case under the assumption that a certain law applies, we will assume that that law applies.").

Our reading of Georgia law indicates that expert testimony is not necessarily required to prove causation in the insurance-contract context, and that—even in the face of admissible expert testimony from the defendant—the plaintiff may satisfy its burden of proof with circumstantial lay testimony.  In *United States Fire Insurance Company v. Tuck*, the Georgia Court of Appeals considered whether the plaintiff, who alleged that an insurance company improperly denied his claim, had presented sufficient causation evidence to withstand judgment as a matter of law. 155 S.E.2d 431, 436–37 (Ga. Ct. App. 1967).  Despite the fact that the plaintiff provided neither expert testimony nor direct lay witness testimony in support of his allegation that lightning had caused damage to his pool, the court held that the plaintiff had satisfied his burden of proof—even in the face of admissible expert testimony from the defendant.  *Id.* at 437–38.  According to the court, "[w]hen a

15

reasonable mind may accept the circumstantial evidence presented as adequate to support a finding in favor of one of the parties on an issue of fact, a verdict based on such finding is authorized." *Id.* at 437 (quotation omitted). "[V]isual observation," the court held, "is not essential in determining whether a particular force produced a given result." *Id.* Thus, the court held that the plaintiff's circumstantial causation evidence—which included the testimony of two witnesses who saw a lighting strike near the pool on the day in question, as well as the plaintiff's own testimony that when he returned home after the storm, the pool had been crushed—"furnished facts from which a logical conclusion could be drawn that lightning did strike and destroy the pool." *Id.*

We think a similar logic applies to this case. Although it's true that Greater Hall presents no admissible expert testimony and that none of Greater Hall's lay witnesses *actually saw* Hurricane Matthew cause the roof damage to the church building, it seems to us that Greater Hall's witnesses provide enough circumstantial evidence for a jury to draw the conclusion that the hurricane did, in fact, cause the roof damage. G. Bobby Hall, the pastor at Greater Hall, testified that when he returned to the church after the storm, he noticed that "[t]rees were uprooted and debris was everywhere." He also stated that he saw leaks in the church building that he had never seen before. Alfred Teston (who, recall, could present lay testimony even though his expert testimony was excluded) testified that

16

he observed the church building's roof both before and after Hurricane Matthew—and that, after the storm, he noticed that "the entire roof had shifted."  And Shawn Brown (who also could present lay testimony) stated that when he observed the church a few days after the hurricane, he noticed that nearby "oak trees that [were] about 70 [or] 80 years old [had been] rooted up out of the ground."  Taken together, we think that this evidence "furnished facts from which a logical conclusion could be drawn" that Hurricane Matthew caused the damage to the roof of Greater Hall's church building.  *Tuck*, 155 S.E.2d at 437.

Southern Mutual's arguments do not convince us otherwise.  Southern Mutual, like the district court, relies heavily on our unpublished decision in *Nix v. State Farm Fire & Casualty Company*, which it claims stands for the proposition that "proving causation requires expert testimony."  Br. of Appellee at 26 (citing *Nix*, 444 F. App'x at 390).  There are a couple of problems with Southern Mutual's reliance on *Nix*.  First, *Nix* dealt with Alabama—not Georgia—law.  *Nix*, 444 F. App'x at 389.  Second, we don't think that *Nix* should be read as *requiring* expert testimony to prove causation.  Although the *Nix* Court granted summary judgment for the defendant in that case—and held that the defendant's expert provided "uncontroverted evidence" showing that the basement wall at issue collapsed because it was not properly designed—it suggested that the plaintiff could have survived summary judgment through lay witness testimony, so long as the witness

17

"had personal knowledge about the construction of the [plaintiffs'] home." *Id.* at 390.  Applying that principle here, Greater Hall survives summary judgment through the lay-witness testimony of Alfred Teston, who personally constructed the church roof at issue.

*    *    *

In sum, we hold that the district court erred in granting summary judgment for Southern Mutual.  The text of the insurance policy does not preclude Greater Hall's claim, and Greater Hall provided sufficient lay-witness evidence for a reasonable jury to find in its favor.[2]

**IV**

Accordingly, we **AFFIRM** the district court's decision to exclude the expert testimony of John Kern, Shawn Brown, and Alfred Teston, and we **REVERSE** its decision to grant summary judgment in favor of Southern Mutual.

---

[2] There's one last issue we need to address.  Greater Hall claims that it is entitled to bad-faith penalties and reasonable attorney's fees pursuant to Georgia Code Annotated § 33-4-6(a), which authorizes such penalties and fees when an insurer refuses to pay a covered claim "in bad faith." The district court granted Southern Mutual's motion for summary judgment on this claim, holding that "[b]ecause the Court granted summary judgment on Greater Hall's only underlying claim in this case—breach of contract—the Court must also grant summary judgment on the issue of bad faith penalties and attorney's fees."  Because we are reversing the district court's grant of summary judgment on Greater Hall's breach-of-contract claim, we remand Greater Hall's bad-faith claim for reconsideration.

18